# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM JACKSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:17-cv-01967-RDP** |
| | } | |
| **U.S. STEEL CORPORATION, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Plaintiff's Motion to Remand (Doc. # 11) and Defendants' Motion to Dismiss (Doc. # 4). The parties have fully briefed both the Motion to Remand (Docs. # 11, 21, 27) and the Motion to Dismiss (Docs. # 4, 29, 30). For the reasons outlined below, the court concludes the Motion to Remand (Doc. # 11) is due to be denied and the Motion to Dismiss (Doc. # 4) is due to be granted.

## I.      Background and Relevant Facts

Plaintiff William Jackson ("Jackson" or "Plaintiff") initiated this lawsuit against Defendants U.S. Steel Corporation ("U.S. Steel"), United States Steelworkers Union ("Union"),[1] Tom Conway ("Conway"), Michael Fields ("Fields"), Raymond D. League ("League"), James P. Thomas ("Thomas"), Nicole L. Demao ("Demao"), Thomas Hanson ("Hanson"), Karl G. Kocsis ("Kocsis"), Donald J. Payne ("Payne"), and Christiana Johnston ("Johnston" and collectively "Defendants") on October 13, 2017 in the Circuit Court of Jefferson County, Alabama. (Doc. # 1-1). In the Complaint, Plaintiff asserts seven state law claims against Defendants: (1) defamation/libel (conspiracy), (2) defamation/libel, (3) defamation per se/libel per se, (4)

---

[1] Plaintiff's Complaint incorrectly names the Union as "United States Steelworkers Union." The Union's full name is "Union Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union. (Doc. # 1 at p.1 n.1).

wantonness, (5) negligence and gross negligence, (6) invasion of privacy, and (7) intentional infliction of emotional distress. (Doc. # 1-1). On November 22, 2017, Defendants removed this action based on the complete preemption of § 301 of the Labor Management Relations Act ("LMRA"). (Doc. # 1). Defendants next filed a Motion to Dismiss on December 8, 2017. (Doc. # 4). On December 19, 2017, Plaintiff filed a Motion to Remand. (Doc. # 11). In the Notice of Removal, Defendants attempt to provide background to Plaintiff's terse Complaint by providing documents involved in Jackson's grievance and arbitration proceedings. (Docs. # 1-3, 1-4, 1-5, 1-6). The allegations in Plaintiff's Complaint (Doc. # 1-1 at p. 2-13) and the factual allegations contained in Defendants' Notice of Removal (Doc. # 1) and Opposition to the Motion to Remand (Doc. # 21) are discussed below.

### A.      Facts Alleged in the Complaint

U.S. Steel employed Jackson for several years. (Doc. # 1-1 at p. 4). While employed, Jackson[2] served as the Grievance Chairman of a Grievance Committee on behalf of his local Union members. (*Id.*). Plaintiff alleges that Fields "lied and claimed that William Jackson was engaging in criminal action in his representation of union employees." (*Id.* at p. 2). He further alleges that U.S. Steel and the Union hid Fields' slanderous statements and conspired to defame Jackson. (*Id.*). Plaintiff advances the general contention that Defendants published a "false and defamatory email with the intent to harm plaintiff's reputation so that the arbitrator would be less likely to believe his claims and statements during his arbitration." (*Id.* at p. 3). Somewhat more specifically, Jackson alleges that, from October 11, 2015[3] through his arbitration date, Defendants conspired to (and did) defame him by publishing the following statements:

---

[2] The Complaint describes Jackson as a "man who had the courage to challenge the Union and U.S. Steel relating to their mistreatment of works, *violation of collective bargaining agreement* and discrimination against other workers." (Doc. # 1-1 at p. 2) (emphasis added).

[3] Plaintiff's Complaint alleges these defamatory actions began on October 15, 2015. (Doc. # 1-1 at p. 6).

"[Jackson] is using the position for his benefits; He has wrongly used his position to influence a company employee to usurp a position for his benefit; He committed a crime in his representing of union members and arguing that he and other grievance committeemen were entitled to super seniority; and He should be in jail for his criminal actions." (*Id.* at p. 5, 6).

## B.    Additional Facts Alleged by Defendants[4]

In Fall 2015, U.S. Steel was going through lay-offs. (Docs. # 1-4 at p. 7; 21 at p. 3). The Basic Labor Agreement ("BLA"), which is the collective bargaining agreement that governs the relationship between Plaintiff, U.S. Steel, and the Union, contains a superseniority provision that, in some instances, allows for an employee to avoid being laid off by "bumping" into a new job classification. (Docs. # 1-3 at p. 46-51; 21 at p. 3). Jackson attempted to avoid being laid off by exercising this superseniority provision; however, despite this attempt, he was laid off. (Docs. # 1-4 at p. 7-8; 21 at p. 3).

On October 30, 2015, Local Union No. 2122 ("Local 2122") filed a grievance on Jackson's behalf. (Docs. # 1-4 at p. 2-3; 21 at p. 3). While the grievance was being processed, Jackson, in his capacity as Grievance Chair, filed unfair labor practice charges against U.S. Steel with the National Labor Relations Board ("NLRB"). (Docs. # 1-4 at p. 5-6; 21 at p. 4). The NLRB dismissed two of these charges and deferred the remaining charges to arbitration. (*Id.*). In January and February 2016, Jackson's grievance went through a Step 2 meeting and a Step 3 meeting, and, on February 19, 2016, the Union appealed Jackson's grievance to arbitration. (Docs. # 1-4 at p. 3; 21 at p. 4). Ultimately, the arbitrator found the grievance and the deferred NLRB charges meritless and issued a decision denying both on June 8, 2016. (Docs. # 1-4; 21 at p. 4).

---

[4] These facts are established by the documents attached to Defendants' Notice of Removal. (*See* Docs. # 1-3, 1-4, 1-5, 1-6).

On June 17, 2016, Jackson filed an unfair labor practice charge against the Union with the NLRB, alleging that the Union failed to properly represent him during arbitration. (Docs. # 1-5 at p. 7; 21 at p. 5). The NLRB Regional Director refused to issue a complaint on this charge. (Doc. # 1-6 at p. 4). Jackson appealed. (*Id.* at p. 2). On November 9, 2016, the General Counsel for the NLRB denied Jackson's appeal and found that "there was insufficient evidence to establish that the Union failed to properly represent you." (*Id.*). The General Counsel also found that "there was insufficient evidence to substantiate [Jackson's] claim" that the Union and U.S. Steel "acted in cohort to get [him] removed from [his] position" and that "there was insufficient evidence to connect" allegedly defamatory emails regarding Jackson to the arbitrator's decision to deny Jackson's layoff grievance. (*Id.*).

### C. Consideration of Defendants' Attached Documents

The general rule is that a district court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing Fed. R. Civ. P. 12(b)). However, a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Id.* at 1276. After careful review, and for at least two reasons, the court concludes both of these elements are met here.

First, Plaintiff's claims center on his allegation that Defendants "published the false and defamatory email with the intent to harm plaintiff's reputation so that the arbitrator would be less likely to believe his claims and statements during arbitration." (Doc. # 1-1 at p. 3). Defendants' attached documents are "at the very heart of" Plaintiff's claims because they include the arbitration decision and Plaintiff's subsequent charge with the NLRB regarding this allegedly

defamatory email. *See Taylor*, 400 F.3d at 1276. Second, Plaintiff does not dispute the authenticity of the Defendants' attached documents, making these documents undisputed. *See id.* (noting that an attached document is "undisputed" if "the authenticity of the document is not challenged"). As such, the court may consider these appendixes without converting Defendants' Motion to Dismiss into a motion for summary judgment. *See id.* at 1275.

## II.    Motion to Remand

After careful review, the court concludes Plaintiff's Motion to Remand is due to be denied.

### A.    Standard of Review

It has long been recognized that federal courts are courts of limited jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Indeed, federal courts may only exercise jurisdiction conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Anytime a "federal court acts outside its statutory subject matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971)).

Generally, any action filed in state court, over which a district court would have original jurisdiction, "may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The burden of establishing subject matter jurisdiction for the purpose of a valid removal to this court is squarely on the removing party. *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005). Federal courts strictly construe removal statutes and resolve all doubts in favor of remand. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-30 (11th Cir. 2006).

B.     Analysis

When diversity of citizenship does not exist (and, to be clear, it does not in this case), federal question jurisdiction is required in order for an action to be properly removed from state court to federal court by a defendant. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Generally, the "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* However, there is "an 'independent corollary' to the well-pleaded complaint rule, . . . known as the 'complete pre-emption' doctrine." *Id.* at 393. The Supreme Court has explained the complete pre-emption corollary to the well-pleaded complaint rule as follows:

> On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA.

*Id.* (internal citations omitted). Here, Defendants argue that, although all of Plaintiff's claims purport to be based on state law causes of action, his Complaint is completely preempted by § 301 of the LMRA.[5] (*See* Docs. # 1, 21).

---

[5] In arguing that this case should be remanded to state court as it is not completely preempted by the LMRA, Plaintiff primarily relies on *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53 (1966). (Docs. # 11, 22). In *Linn*, the Court held "that where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court does have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him." 383 U.S. at 55. The ruling in *Linn* is not only distinguishable from this case, but it also is not applicable to Plaintiff's Motion to Remand as *Linn* focused on *Garmon* preemption based on *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). *See generally Linn*, 383 U.S. 53 383 U.S. 53 (holding that, while state claims are presumptively preempted if they concern conduct prohibited or protected by the National Labor Relations Act ("NLRA"), a state claim may

6

Section 301 provides, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). Furthermore, "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.*, 482 U.S. at 394. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted). To determine whether Plaintiff's state law claims require interpretation of the terms of the collective bargaining agreement, the court examines the elements of the state law claims. *Lightning v. Roadway Exp., Inc.*, 60 F.3d 1551, 1557 (11th Cir. 1995).

### 1. Plaintiff's Defamation Claims Are Preempted by § 301

Plaintiff claims that Defendants conspired to defame and libel him (Count 1), Defendants did defame and libel him (Count 2), and Defendants are liable for defamation per se and libel per se (Count 3). (Doc. # 1-1 at p. 4-8). These three defamation claims center on alleged false statements regarding Plaintiff's representation of Union members.[6] (*See id.* at p. 5-7).

---

not be within the exclusive jurisdiction of the NLRB and may sustained if the conduct to be regulated is that of only peripheral concern to federal law).

[6] The conspiracy and defamation/libel claims allege that Defendants mailed, emailed, or circulated statements that Plaintiff was using his Grievance Chairman position for his benefits, wrongly used his position to influence a company employee to usurp a position for his benefit, committed a crime in his representation of Union members and in arguing that he was entitled to superseniority, and should be in jail. (Doc. # 1-1 at p. 5-6). The defamation per se/libel per se claim alleges that Defendants "published the false statements that plaintiff had engaged in criminal activity in his representation of union members." (*Id.* at p. 7).

Defendants argue that, because the resolution of these defamation claims require interpretation of the BLA, these claims are preempted by § 301. The court agrees.

"The elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means."[7] *See Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013). Under Alabama law, "'[t]he elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.'" *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003) (quoting *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala.1989)). Libel is a form of defamation that involves the publication of a defamatory comment. *See Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1202 (N.D. Ala. 2017). Words are defamatory per se and libelous per se "if they directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood" or if they "are understood to impute dishonesty or corruption to an individual." *Kelly v. Arrington*, 624 So. 2d 546, 549 (Ala. 1993).

In order to resolve Plaintiff's defamation claims, the court will be required to determine whether Defendants' alleged statements were false. *See Wal-Mart Stores, Inc.*, 872 So. 2d at 840. Because Plaintiff alleges that Defendants improperly stated that he wrongfully used his position and committed a crime (in the context of his assertion that he and other Grievance Committeepersons were entitled to superseniority based upon a provision in the BLA), the court

---

[7] Plaintiff argues that the unlawful purpose of Defendants' alleged conspiracy was to defame and libel him by circulating false statements regarding his improper and illegal work as Grievance Chairman. (Doc. # 1-1 at p. 5).

will be called upon to analyze the BLA to determine whether these alleged statements were false. As such, it is clear that Plaintiff's defamation claims are "inextricably intertwined with consideration of the terms of the labor contract" and are preempted by § 301. *See Allis-Chalmers Corp.*, 471 U.S. at 220.

Additionally, Plaintiff argues that these allegedly defamatory statements were made during the arbitration process and intended to harm Plaintiff's reputation with the arbitrator. (Doc. # 1-1 at p. 3). The BLA contains provisions governing disputes arising out of the BLA, along with the grievance and arbitration process. (*See* Doc. # 1-3 at p. 54-66). Because Plaintiff's defamation claims directly relate to the grievance and arbitration process, which is governed by the BLA, these claims are preempted by § 301. *See, e.g.*, *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1340 (11th Cir. 2004) (holding that claims "based upon statements made prior to their termination or during the grievance process" were preempted by the LMRA because these claims require consideration of the terms of the collective bargaining agreement); *Gillis v. Reynolds Metals Co.*, No. CV 84-HM-5319-NW, 1986 WL 15711, at *5 (N.D. Ala. Jan. 27, 1986) (finding that the handling of the plaintiff's layoff and any dispute the plaintiff had about the layoff was governed by the collective bargaining agreement, thus § 301 applied to the resolution of the conflict).

## 2.    Plaintiff's Remaining Claims Are Preempted by § 301

Plaintiff's wantonness, negligence and gross negligence, invasion of privacy, and intentional infliction of emotional distress claims all incorporate by reference Plaintiff's core assertion that Defendants "published the false and defamatory email with the intent to harm plaintiff's reputation so that the arbitrator would be less likely to believe his claims and statements during arbitration." (Doc. # 1-1 at p. 3, 8-12). Additionally, Plaintiff's wantonness

claim alleges that this conduct was done "with reckless or conscious disregard for the truth, rights, reputation and employment of William Jackson." (*Id.* at p. 9). Similarly, Plaintiff's intentional infliction of emotional distress claim alleges that Defendants "acted intentionally, or in the alternative recklessly, when they published false and defamatory statements." (*Id.* at p. 11). Plaintiff's negligence and gross negligence claims and invasion of privacy claim simply recite the elements of these types of claims and do not allege any facts other than those incorporated by reference. (*Id.* at p 9-10). Therefore, it is readily apparent that all of these claims are based on Defendants' allegedly defamatory statements and their alleged impact on the arbitration proceedings. (*See* Doc. # 1-1 at p. 8-12). As discussed above, resolution of whether Defendants defamed Plaintiff as alleged in the Complaint requires interpretation of the BLA as these allegedly defamatory statements relate to (1) the BLA's superseniority provisions and (2) the grievance and arbitration process. However, in the interest of completeness, the court further explores each of these remaining claims below.

### a.  Plaintiff's Wantonness Claim Is Preempted by § 301

"To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (internal quotations omitted). "To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id.* (internal quotations omitted). Plaintiff alleges that Defendants published statements regarding him that were made "with reckless of conscious disregard for the truth, rights, and reputation and employment of William Jackson." The court cannot adjudicate this wantonness claim without examining the BLA to determine (1) what rights to employment Jackson had under the BLA and (2) the truth of Defendants' alleged email regarding Jackson's representation of Union members and attempted use of the superseniority provision of the BLA.

Thus, Plaintiff's wantonness claim is preempted by § 301.  *See Allis-Chalmers Corp.*, 471 U.S. at 220.

### b. Plaintiff's Negligence and Gross Negligence Claim Is Preempted by § 301

"To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."  *Hilyer*, 227 So. 3d at 22 (internal quotations omitted).  In this case, Plaintiff broadly states that Defendants owed him "the duty to refrain from performing any acts that would negligently, recklessly, wantonly, or willfully injury" him.  (Doc. # 1-1 at p. 9).  Based on the Complaint, Plaintiff appears to base this claim either on a duty to not defame him or duties derived from the BLA.  The court has already discussed why Plaintiff's defamation-related claims are preempted by § 301.  To the extent that Plaintiff is alleging that Defendants owed him duties based on the BLA, such duties would require interpretation of the BLA and are preempted by § 301.  *See Allis-Chalmers Corp.*, 471 U.S. at 217.

Furthermore, Plaintiff's claims against the Union relate to its alleged attempt to undermine him in arbitration.  (*See* Doc. # 1-1 at p. 3).  These claims against the Union are merely an attempt to repackage a duty of fair representation claim as a state law claim.  A duty of fair representation claim against a union is governed and preempted by federal law.  *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also Miller v. King*, No. 7:14-CV-00872-LSC, 2015 WL 661395, at *3 (N.D. Ala. Feb. 17, 2015) ("Because federal law so thoroughly defines a union's rights and duties when representing its members, any state law attempting to regulate union conduct within the concern of the federal duty of fair representation is considered preempted.").

### c. Plaintiff's Invasion of Privacy Claim Is Preempted by § 301

Under Alabama law, "[t]o establish false light invasion of privacy, a plaintiff must show (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Horne v. Russell Cty. Comm'n*, 379 F. Supp. 2d 1305, 1342 (M.D. Ala. 2005), *aff'd*, 180 F. App'x 903 (11th Cir. 2006). To support his invasion of privacy claim, Plaintiff alleges that "[t]he conduct of Defendants complained of herein [in the incorporated facts] constitutes an invasion of privacy of Mr. Jackson, in that it intrudes into his private life and places him in a false light in the eyes of those who witnessed the publication." (Doc. # 1-1 at p. 10). This claim arises from alleged statements made in connection with Plaintiff's grievance and arbitration proceedings. (Doc. # 1-1 at p. 3). To evaluate this claim and Defendants' duties of confidentiality to Plaintiff, the court would have to examine the BLA to determine what rights to confidentiality Plaintiff possessed during these proceedings. *Cf. Crowne Investments, Inc. v. United Food & Commercial Workers, Local No. 1657*, 959 F. Supp. 1473, 1479 (M.D. Ala. 1997). Because a determination of whether Defendants are liable to Plaintiff for this claim cannot be made without interpreting the BLA, this claim is preempted by § 301. *See id.* (finding that fraud and deceit claims were preempted by § 301 because the court could not evaluate the claims without "interpreting the underlying contract and deciding if there was a breach of the confidentiality clause"); *see also Horne v. S. Bell Tel. & Tel. Co.*, 793 F. Supp. 315, 317 (S.D. Fla. 1992), *aff'd*, 63 F.3d 1112 (11th Cir. 1995) ("[A] privacy claim arising from threatened disciplinary action and termination does not constitute an exception to federal preemption.").

**d.      Plaintiff's Intentional Infliction of Emotional Distress Claim Is Preempted by § 301**

The elements of an intentional infliction of emotional distress claim under Alabama law are as follows: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) . . . the distress was severe." *Martin v. Hodges Chapel, LLC*, 89 So. 3d 756, 763 (Ala. Civ. App. 2011), *as modified on denial of reh'g* (Feb. 17, 2012) (internal quotations omitted).  Here, Plaintiff alleges that Defendants' are liable for this claim because "they published false and defamatory statements."  (Doc. # 1-1 at p. 11).  In order to adjudicate whether the allegedly defamatory conduct of which Plaintiff complains was "extreme and outrageous," the court would first be required to determine whether Defendants defamed Plaintiff, which -- for the reasons explained above -- would require interpretation of the BLA.  Accordingly, this claim is preempted by § 301.  *See Humphreys v. PIE Nationwide, Inc.,* 723 F. Supp. 780, 783-84 (N.D. Ga. 1989) (holding that an intentional infliction of emotional distress claim was preempted by § 301 because analysis of the claim required interpretation of the terms of the collective bargaining agreement).

In summary, Plaintiff has attempted to artfully plead his Complaint so that his § 301 claims are repackaged as state law tort claims.  However, because all of Plaintiff's claims are "inextricably intertwined" with consideration of the BLA, these claims are completely preempted by § 301, making a federal court the proper forum for this case.  *See Allis-Chalmers Corp.*, 471 U.S. at 220.

### III. Motion to Dismiss

Having decided that Plaintiff's Motion to Remand (Doc. # 11) is due to be denied because Plaintiff's state law claims are completely preempted by § 301 of the LMRA, the court now discusses the merits of Defendants' Motion to Dismiss (Doc. # 4).

#### A. Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Candield, Paddock & Stone, PLC*, 413 Fed. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental,* 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

### B.     Analysis

"If a court determines that a plaintiff's state law claims are preempted by § 301 or the duty of fair representation, it may either dismiss those claims outright or treat them as federal claims." *Davis v. Cargill Inc.*, No. 2:12-CV-704-MEF, 2013 WL 1294678, at *7 (M.D. Ala. Mar. 28, 2013) (citing *Allis-Chalmers*, 471 U.S. at 220). In this case, the court finds that Plaintiff's Complaint is due to be dismissed because Plaintiff's artful pleading shows that he has no interest in pursuing federal § 301 claims against Defendants.

Plaintiff's claims are also due to be dismissed for an alternative reason: they are time-barred.[8] "Where an employee sues the employer for breach of the collective bargaining

---

[8] The court notes that Plaintiff does not contest that his claims, if preempted, are time-barred. (*See* Doc. # 29).

agreement and the union for breach of the union's duty of fair representation, the claims are known as hybrid § 301/fair representation claims." *Shanks v. Potter*, 451 F. App'x 815, 817 (11th Cir. 2011) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)). Here, Plaintiff has sued his former employer (U.S. Steel), the Union, and various individuals[9] (who are affiliated either with U.S. Steel or the Union) for alleged violations of the BLA; therefore, these state law claims are due to be treated as hybrid § 301/fair representation claims. *See id.* A six-month statute of limitations applies to hybrid § 301/fair representation claims. *See Bartholomew*, 361 F.3d at 1342 (finding that preempted state law claims properly construed as hybrid § 301/fair representation claims are subject to a six-month statute of limitations); *Shanks*, 451 F. App'x at 817 ("There is a six-month statute of limitations for hybrid § 301/fair representation claims.").

In this case, Plaintiff's Complaint centers on events that occurred in October 2015, which is when the allegedly defamatory statements were made. (Doc. # 1-1 at p. 5-6). Plaintiff's claims potentially extend to the arbitration and grievance process, which did not continue past November 9, 2016, when the General Counsel for the NLRB denied Jackson's appeal and found that there was insufficient evidence to establish that the Union failed to properly represent him. (Doc. # 1-6). Therefore, Plaintiff knew or should have known of Defendants' alleged violations of the BLA by October 2015 at the earliest or by November 9, 2016 at the very latest. *See Davis*, 2013 WL 1294678, at *8. Because Plaintiff did not file his Complaint until October 13, 2017, more than six months after either of these dates, his hybrid § 301/fair representation claims are untimely and are due to be dismissed as a matter of law. *See id.*; *see also Shanks*, 451 F. App'x

---

[9] With the exception of stating that "Michael Fields lied and claims that William Jackson was engaging in criminal action in his representation of union employees," Plaintiff's Complaint does not explain the positions or significance of these individual defendants. (*See* Doc. # 1-1 at p. 2-4).

at 817.  Furthermore, because Plaintiff's hybrid § 301/fair representation claims are incurable as they are time-barred, Plaintiff's claims are due to be dismissed with prejudice.

**IV.     Conclusion**

For the reasons outlined above, Plaintiff's Motion to Remand (Doc. # 11) is due to be denied and the Motion to Dismiss (Doc. # 4) is due to be granted.  A separate Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 24, 2018.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE